UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

WILSON O. PETERS,

Petitioner,

v.

DWIGHT NEVEN, et al.,

Respondents.

Case No. 2:14-cv-01055-RFB-VCF

ORDER

Wilson O. Peters' counseled, first-amended 28 U.S.C. § 2254 habeas corpus petition comes before the court for adjudication on the merits (ECF No. 8).

**I.   Procedural History and Background**

On May 26, 2010, a jury convicted Peters of count 1: battery with use of a deadly weapon and count 2: assault with a deadly weapon (exhibit 15 to first-amended petition, ECF No. 8).[1] The state district court sentenced Peters as a habitual criminal to a term of ten years to life on each count, to run concurrently. Exh. 17. Judgment of conviction was filed on October 20, 2010. Exh. 18.

Peters timely appealed; on February 24, 2012, the Nevada Supreme Court affirmed the convictions, and remittitur issued on March 20, 2012. Exhs. 20, 23, 24.

Peters filed a proper person motion for appointment of counsel on July 11, 2012, and the state district court appointed counsel for state post-conviction proceedings. Exh. 25. Peters filed a counseled state postconviction petition for a writ of habeas corpus on

---

[1] Exhibits referenced in this order are exhibits to petitioner's first-amended petition, ECF No. 8, and are found at ECF Nos. 9-12, 28, 42, 45.

1

December 22, 2012. Exh. 26. On May 12, 2014, the Nevada Supreme Court affirmed the denial of the petition, and remittitur issued on June 9, 2014. Exhs. 36, 37.

On February 29, 2016, this court granted respondents' motion to dismiss in part, dismissing the state-law claim of redundant convictions in ground 1 (ECF No. 34). Respondents have now answered the claims remaining before the court (ECF No. 37), and Peters replied (ECF No. 44).

II. **AEDPA Standard of Review**

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating

2

state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual determinations. *Id.* The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

3

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under 28 U.S.C. § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

**III.    Instant Petition**

**Ground 1**

The remaining claim in ground 1 is that Peters' sentence violates the Fifth Amendment's protection against double jeopardy (ECF No. 8, pp. 11-14). He argues that he was convicted of both assault and battery for stabbing Stewart Gibson with a small kitchen knife based on a) the actual stabbing, and b) placing Gibson in a state of reasonable apprehension of immediate bodily harm just prior to stabbing him.

The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense. U.S. Const. amend. V. To determine whether two offenses are the "same" for double jeopardy purposes, a court must consider "whether each offense contains an element not contained in the other; if not, they are the 'same offense' and double jeopardy bars additional punishment and successive prosecution." *United States v. Dixon*, 509 U.S. 688, 696 (1993) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). "Conversely, '[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not.'" *Wilson v. Belleque*, 554 F.3d 816, 829 (9th Cir. 2009) (quoting *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003). "'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to

4

establish the crimes.'" *Id.* (quoting *Iannelli v. United States*, 420 U.S. 770, 785-86 n.17 (1975). the "same act or transaction" can "constitute a violation of two distinct statutory provisions." *Blockburger*, 284 U.S. at 304.

Gibson testified at trial that Peters lunged at him, attempted several times to stab him, stabbed him above his hip and cut his forearm as he tried to block the attack, and that he was able to avoid Peters' last couple of attempts to stab him. Exh. 12, pt. 1, p. 68-69.

In rejecting this claim, the Nevada Supreme Court set forth the *Blockburger* test. Exh. 23, p. 3. The Nevada Supreme Court also stated that NRS 200.481 provides that a person commits the crime of battery by using willful and unlawful force or violence upon the person of another. While NRS 200.471 is the unlawful attempt to use physical force against another person or an action that intentionally places another person in reasonable apprehension of immediate bodily harm. Thus the state supreme court concluded that "[b]ecause assault and battery require different elements and seek to punish different harms, convictions for both crimes do not violate the Double Jeopardy Clause." *Id.* (citing *State v. Carter*, 379 P.2d 945, 947 n.3 (Nev. 1963) ("… the charge of assault with a deadly weapon does not necessarily include a battery . . ."). The Nevada Supreme Court explained:

> The gravamen of assault is inducing fear or apprehension of bodily harm, while the gravamen of battery is causing actual bodily contact through force or violence . . . Here, the State charged Peters with battery for the three times that he actually stabbed Gibson, whereas the assault charge was based on the one or two times that Peters swung at Gibson but did not make bodily contact. Although both actions occurred during the same attack, Peters engaged in two separate illegal acts.

*Id.* at 3-4.

5

As set forth above, the assault and battery are separate and distinct criminal offenses. Thus, Peters has failed to demonstrate that the Nevada Supreme Court's decision was contrary to, or involved an unreasonable application of, federal law established by the United States Supreme Court. 28 U.S.C. § 2254(d). Accordingly, ground 1 is denied.

**Ground 2**

Peters contends that the trial court erroneously instructed the jury regarding the presumption of innocence, and therefore, improperly lessened the prosecutor's burden to prove all elements of the charged offenses beyond a reasonable doubt in violation of Peters' Sixth and Fourteenth Amendment rights (ECF No. 8, pp. 15-16).

To obtain relief based on an error in instructing the jury, a habeas petitioner must show the "'instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). Where the defect is the failure to give an instruction, the inquiry is the same, but the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155-157 (1977); *see also Estelle*, 502 U.S. at 72. The Constitution does not require courts to utilize "any particular form of words" in instructing the jury of the government's burden of proof. *Victor v. Nebraska*, 511 U.S. 1, 5 (1994). Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury." *Id.* (citing *Holland v. United States*, 348 U.S. 121, 140 (1954)) (alterations in original).

The state court record reflects that the district court instructed the jury that "[t]he defendant is presumed innocent until the contrary is proved" instead of "the defendant is presumed innocent unless the contrary is proved." Exh. 13, jury instruction no. 5. Defense counsel had objected to proposed jury instruction no. 5 and requested that the court change it to read "unless the contrary is proved" instead of "until the contrary is proved." Exh. 12, pt. 2, p. 41. The district court denied the request. *Id*.

Affirming the convictions, the Nevada Supreme Court stated that the jury instruction complied with Nevada law and noted that it had approved this exact jury instruction in *Blake v. State*, 121 P.3d 567, 580 (Nev. 2005). Exh. 23, p. 8.

Peters maintains that the instruction undermined the State's burden of proof because the word "until" implies it was inevitable that he would be convicted. Respondents state that the United States Supreme Court has not directly addressed the use of the phrase "innocent until proven guilty" as opposed to the use of "unless" as Peters urges (ECF No. 37, p. 10). Moreover, while not dispositive, they point out that many Supreme Court cases use "innocent until proven guilty" in their discussion of the presumption of innocence. *See Neely v. Pennsylvania*, 411 U.S. 954, 958 (1973) ("a defendant is presumed innocent until proved guilty. Moreover, due process of law requires that a person be convicted by proof beyond all reasonable doubt"): *see also Betterman v. Montana*, ___ U.S. ___, 136 S.Ct. 1609, 1613 (2016); *Estelle*, 425 U.S. at 518-19; *Lerner v. Casey*, 357 U.S. 399, 413 (1958); *Andres v. U.S.*, 333 U.S. 740, 744 n.5 (1948).

Peters has not demonstrated that the Nevada Supreme Court's adjudication of federal ground 2 resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the

7

United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Federal habeas relief as to ground 2 is denied.

**Ground 3**

Peters alleges that his trial counsel rendered ineffective assistance in violation of his Sixth and Fourteenth Amendment rights (ECF No. 8, pp. 16-20). Ineffective assistance of counsel (IAC) claims are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. *Williams*, 529 U.S. at 390-91 (citing *Strickland*, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Id*. To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Id*. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. *Id*.

Ineffective assistance of counsel under *Strickland* requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against

an objective standard of reasonableness, . . . under prevailing professional norms." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the *Strickland* prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

If the state court has already rejected an ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary to, or an unreasonable application of, the *Strickland* standard. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.*

The United States Supreme Court has described federal review of a state supreme court's decision on a claim of ineffective assistance of counsel as "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The Supreme Court emphasized that: "We take a 'highly deferential' look at counsel's performance . . . through the 'deferential lens of § 2254(d).'" *Id.* at 1403 (internal citations omitted). Moreover, federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Cullen*, 563 U.S. at 181-84. The United States Supreme Court has specifically reaffirmed the extensive deference owed to a state court's decision regarding claims of ineffective assistance of counsel:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.* at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general

9

> one, so the range of reasonable applications is substantial. 556 U.S. at 124. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington*, 562 U.S. at 105. "A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Id.* at 104 (quoting *Strickland*, 466 U.S. at 689). "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Id.* (internal quotations and citations omitted).

**Ground 3(a)**

Peters argues that his counsel failed to retain a defense expert in neurology and psychological assessment to evaluate and develop trial defenses and mitigation material even though Peters had been diagnosed with bipolar disorder, schizophrenia, and paranoia and had suicidal ideations (ECF No. 8, pp. 16-18). Peters alleges that he was not receiving treatment at the time of the offense. Peters contends that his counsel was on notice that such investigation might bear fruit because the state district court required a competency evaluation. *Id.*

The state-court record reflects that on October 23, 2009, the state district court entered an order based on the initial assessments of two psychologists and/or psychiatrists, finding that commitment was required for a determination as to Peters' ability to receive treatment and achieve competency. Exhs. 7, 42, 43. At a December 31, 2009 status hearing, Peters' counsel indicated that Peters had been deemed competent. Exhs. 8, 44, 45. The state district court order finding Peters competent was filed on January 22, 2010. Exh. 9. The presentence investigation report states that Peters had been diagnosed as bi-polar, schizophrenic and paranoid and that Peters was not receiving treatment or taking medications at the time of the report. It also states that Peters said he was under the influence of alcohol and marijuana when he committed the

offense, and responding officers noted that he smelled strongly of alcohol. Exh. 40. At the sentencing hearing, defense counsel referenced what he described as Peters' documented, long history of mental illness and substance abuse and asked the court to sentence Peters to probation with an inpatient program to deal with alcohol and mental health issues. Exh. 17, pp. 8-9. Counsel told the court that he and a social worker spoke with Peters' family and according to the family:

> Peters was raised by a single mother. His father abandoned the family as a – when he was still a baby. He did spend a significant amount of time of his youth in an actual – actually in a homeless shelter. Now when we take that and couple that with the underlying mental health aspects, I – I think that we see that this is somebody who was set up for failure.
>
> His family has indicated that he has had a lot of problems dealing with these mental health concerns. He has not had the opportunity to receive the treatment that he probably needs for those.

*Id.* at 9.

In denying Peters' state postconviction petition, the district court found that he set forth only bare allegations, that the fact that Peters may have had mental health issues did not render him mentally incompetent to stand trial and pointed out that a competency evaluation had been completed and Peters was deemed competent to stand trial. Exh. 30, p. 5.

The Nevada Supreme Court affirmed the denial of this claim:

> Appellant's bare claims have failed to demonstrate deficiency or prejudice. Appellant had been found competent to stand trial, and he did not allege any facts that should have led reasonable counsel to question that finding. Appellant also failed to state what the impact of his mental illnesses were on his ability to appreciate the consequences of his actions or how testimony to that effect would have affected the outcome of trial. We therefore conclude that the district court did not err in denying this claim.

Exh. 36, p. 3.

Respondents filed their answer to this federal petition on June 8, 2016 (ECF No. 37). Peters, through counsel, filed his reply on September 28, 2016 (ECF No. 44). Just eight days before filing the reply, Peters filed supplemental exhibits in support of the

11

amended petition (ECF No. 45). These exhibits included a May 18, 2016 assessment of Peters by a neuropsychologist. Exh. 47. Peters urges that this court may consider this recent assessment in support of ground 3(a) based on anticipatory default principles and under *Cullen v. Pinholster*, 563 U.S. 170 (2011), *Dickens v. Ryan*, 740 F.3d 1302 (2014), and *Martinez v. Ryan*, 566 U.S. 1 (2012).

This report, completed more than seven years after the charged incident took place, notes that Peters' medical problems include sciatica, hernia, bipolar disorder, and hypothyroidism. Exh. 47, p. 3. The report states that Peters reported a history of heavy alcohol and marijuana use. It opines that, seven years earlier, Peters' mental health issues would have predicted poor judgment, inability to respond to basic reasoning, and impulsive behavior, contributing to the incident. *Id.* at 6.

This court notes that, on the one hand, the pre-commitment evaluators recommended that Peters—who had been in custody for five months without any mental health treatment—be placed in Lake's Crossing psychiatric facility. However, less than two months later, psychiatric evaluators found that Peters was competent, including that he was able to provide recent and past personal history, recall details of recent and past personal events, and describe the charges against him and the legal process. Exhs. 44, 45.

Further, the trial testimony reflected that Peters knew at least some of the people at the barbecue, asked an acquaintance for and was given a cigarette, then asked for more cigarettes and beer and became angry when these requests were denied. His mental health issues may well have contributed to his subsequent actions of kicking over the grill and ultimately returning with a kitchen knife and stabbing the victim. But even assuming, without deciding, that the new assessment is properly before the court, it would be insufficient to show that counsel was deficient and Peters was prejudiced. Nothing in the 2016 report—again, seven years after the incident--indicates such serious mental illness that reasonably could have led to a different jury verdict. Peters has not demonstrated that he was prejudiced by trial counsel failing to retain a mental health

12

expert.  Thus, Peters has not demonstrated that the Nevada Supreme Court's determination was contrary to or involved an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).

**Ground 3(b)**

Peters claims that counsel failed to adequately investigate the case and prepare for trial and sentencing.  He notes that his counsel waited until weeks before trial to file a motion seeking exculpatory and impeachment evidence and argues that counsel did not adequately communicate with him.  Peters states that he requested that his counsel file certain motions and conduct specific investigation regarding his defense of mutual combat and that he asked his attorney for a copy of his preliminary transcript and medical reports, all to no avail.  Peters contends that because of the lack of communication, counsel was unable to find witnesses or other exculpatory sources (ECF No. 8, pp. 17-18).

Peters' counsel elicited the following testimony at trial.  A guest at the barbecue where the events at issue took place testified on cross-examination that she did not know who the person with the knife was. Exh. 12, pt. 1, p. 42. Another barbecue guest testified on cross that he only saw the two people fighting with fists.  *Id.* at 53.  The victim testified that when he was back-pedaling to try to get away from Peters, he backed into or was grabbed from behind by the victim's friend George, who was also barbecuing with them.  *Id.* at 113.  Defense counsel highlighted inconsistencies between the alleged victim's statement to police, preliminary hearing testimony, and trial testimony.  *Id.* at 83-94.  In response to defense questioning, the victim grew increasingly agitated, then began asking his own questions and refusing to answer questions and refusing to do as directed by the court.  The court then called a recess.  On cross-examination, defense counsel elicited testimony from one of the responding police officers that he did not find a knife at the scene or on Peters' person.  Exh. 12, pt. 2, p. 139, 142.  Responding to defense questioning, the officer stated that, although he had testified on direct that Peters tried to

run away from officers, he did not include that in the incident report. *Id.* at 142-143. Another responding officer testified that he believed that the victim was either intoxicated or under the influence of a controlled substance. *Id.* at 162. In closing argument, defense counsel argued that the eye witness testimony showed that they were not sure of what happened and that the State failed to prove beyond a reasonable doubt that the kitchen knife in question constituted a deadly weapon. He also argued that in the confusion, it was possible that Gibson was actually injured when he backed into George, who had been grilling and might have been holding barbecue tongs or a fork. *Id.* at 184-187.

Rejecting the claim that trial counsel was ineffective for failing to adequately investigate and prepare for trial—including developing an alibi—the state district court found that Peters offered no specific evidence or information that would have resulted from any further investigation, and counsel could not make up an alibi where none existed. Exh. 30, pp. 6-7. The court found that the record clearly demonstrated that defense counsel was adequately prepared to cross examine each State's witness and cited several specific inconsistencies in the victim's testimony that defense counsel highlighted. The court noted that defense counsel elicited the police testimony that no knife was found, that the victim appeared intoxicated—contrary to the victim's testimony—and that the arrest reports did not indicate that Peters tried to flee or resisted arrest. The court concluded that Peters' claim that his counsel failed to present any defense was belied by the record and was baseless. *Id.*

The Nevada Supreme Court also rejected Peters' claim:

> Appellant's bare claims have failed to demonstrate deficiency or prejudice. Appellant complains that counsel did not respond to a letter in which appellant requested that some motions be filed and investigation be conducted and that counsel did not provide requested copies of preliminary hearing transcripts or the victim's medical records. Appellant did not state what motions he wanted filed, what investigation counsel should have undertaken, what the outcomes of either of those actions would have been, or how counsel's taking any of the aforementioned actions could have affected the outcome of the trial.

Exh. 36 at 4.

14

1 | Peters has not demonstrated that the Nevada Supreme Court's determination was contrary to or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

**Ground 3(c)**

Peters argues that his trial counsel failed to bring the case to trial within a reasonable time. He claims that he had no choice but to waive his Sixth Amendment right to a speedy trial when it was clear his counsel was not ready to go to trial (ECF No. 8, pp. 19-20).

The state district court pointed out that Peters decided to waive his speedy trial right and requested a competency evaluation, which delayed the trial. Exh. 30, pp. 9-10. The court noted that at the same time Peters complained his right to a speedy trial was violated, he was also claiming counsel was ineffective for failing to investigate his mental health and competency issues further. Finally, the court found that Peters received credit for time served and failed to demonstrate any prejudice or any reasonable likelihood of a better result if he had been tried sooner. *Id*.

The Nevada Supreme Court affirmed the denial of this claim, explaining that Peters did not demonstrate that it was objectively unreasonable for counsel to move to continue the trial in order to be prepared and that Peters' bare claim that the continuance gave the State more time to investigate failed to specify what additional information the State uncovered or how any such information affected the trial result. Exh. 36, pp. 3-4.

Peters has not demonstrated that the Nevada Supreme Court's determination was contrary to or involved an unreasonable application of Strickland, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, federal habeas relief is denied as to grounds 3(a), 3(b), and 3(c).

**IV.     Certificate of Appealability**

1        This is a final order adverse to the petitioner. As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA). Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

       Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct. *Id.*

       Having reviewed its determinations and rulings in adjudicating Peters' petition, the court finds that none of those rulings meets the *Slack* standard. The court therefore declines to issue a certificate of appealability for its resolution of any of Peters' claims.

**V.  Conclusion**

**IT IS THEREFORE ORDERED** that petitioner's amended petition (ECF No. 8) is **DENIED** in its entirety.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that the Clerk shall enter judgment and close this case.

**DATED**: July 18, 2018.



**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**